| | |
|---|---|
| ENGLEWOOD MARKETING GROUP, INC., a Delaware corporation, | Case No. 1:23-cv-00227-WCG |
| *Plaintiff*, | |
| v. | |
| ONL-RBW LOGISTICS, LLC, a Georgia limited liability company, | |
| *Defendant*. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER VENUE

### INTRODUCTION

Plaintiff Englewood Marketing Group, Inc. ("EMG") sued Defendant ONL-RBW Logistics, LLC ("RBW") in the wrong state. The only connection between the matters at issue in this lawsuit and the State of Wisconsin is that EMG is located in Wisconsin. The Agreement that is the subject of EMG's single breach of contract claim pertains to a Georgia company providing storage space, materials handling facilities, and personnel necessary for the receipt, storage, packaging and delivery of EMG's goods in Georgia. RBW has no contacts with Wisconsin, and the Agreement required no performance in Wisconsin. Consistent with the Georgia-centric nature of the parties' relationship, the Agreement expressly provides that (a) it is governed and construed by the laws of the state in which the subject facilities are located and (b) any action relating to the Agreement may be brought the state in which the subject facilities are located—Georgia.

Under the circumstances here, neither Wisconsin's long-arm statute nor the Due Process clause permit the exercise of personal jurisdiction over RBW. Therefore, the Court should dismiss

the Complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure.  In the event the Complaint is not dismissed, this case should be transferred to the United States District Court for the District of Georgia pursuant to 28 U.S.C § 1404(a).

## BACKGROUND

### A.    THE PLEADING ALLEGATIONS

EMG is a Delaware corporation with its principal place of business located in Green Bay, Wisconsin.  Compl. ¶ 3.  RBW is a Georgia limited liability company with its principal place of business located in Augusta, Georgia.  *Id.* ¶ 4.  RBW's registered agent address is also located in Augusta, Georgia.  *Id.*

EMG is a national distribution, marketing, and logistics solutions provider focused on kitchen, home, and personal care products.  Compl. ¶ 3.  EMG and RBW entered into a written agreement, effective August 1, 2019 (the "Agreement"), in which RBW provided "storage space, materials handling facilities, and personnel necessary for the receipt, storage, packaging and delivery," of EMG's "***goods in Pooler, Georgia***."  Compl. ¶ 7 and Ex. A (Agreement) at 1 (emphasis added).  Pursuant to the Agreement, RBW provided physical facilities necessary to perform these storage and shipping services, specifically a "***60,000 square feet of storage space at a facility located at 300 Morgan Lakes Industrial Boulevard in Pooler Georgia***" ("Pooler, Georgia Facility").  Compl. ¶ 9 (emphasis added).

Under the Agreement, RBW agreed to receive, store, unpack, repack, sort, inspect, and prepare shipment for goods that EMG deposited at the Pooler, Georgia Facility.  Compl. ¶ 9 (citing Agreement § 4).  RBW began storing EMG's goods and performing related services under the Agreement on or around August 1, 2019.  *Id.* ¶ 10.  EMG alleges various deficiencies with RBW's services at the Pooler, Georgia Facility, such as failure to ship goods "to the standards" of EMG's

customers, inadequate labeling of goods, shipping and inventory discrepancies, and "deficient loading, palletization, replacement of pallets and shrink-wrapping of" EMG's goods. *Id.* ¶ 11.

The Agreement's initial term was 36 months, beginning on August 1, 2019. Compl. ¶ 12. The Agreement provided that the initial term would automatically renew on a year-to-year basis, but that the parties had a right to terminate the Agreement after the initial term with a six-months' notice by service a written notice of termination on the parties. *Id*. On August 4, 2021, EMG and RBW executed a First Amendment to Agreement ("Amendment"). Compl. ¶ 13 and Ex. B. Under the Amendment, and in addition to storing goods at the Pooler, Georgia Facility, RBW would also begin storing EMG's goods and providing services at RBW's facility located at 239 Jimmy Deloach Parkway, Savannah, Georgia ("Savannah, Georgia Facility"). *Id.* The Amendment extended the Agreement's initial term until December 31, 2022 with respect to the Savannah, Georgia Facility, but terminated upon the date of the removal of EMG's remaining goods at the Pooler, Georgia Facility. *Id.*

EMG alleges that it learned in August 2022 that RBW did not own the Savannah, Georgia Facility and that RBW had to surrender the facility back to its landlord at the end of 2022. Compl. ¶ 14. In October 2022, EMG also alleges that RBW informed EMG that (1) RBW could no longer receive any more good at the Savannah, Georgia Facility, (2) EMG would need to provide staff to remove any product remaining at the Savannah, Georgia Facility by the end of the year, and (3) any remaining product left at the Savannah, Georgia Facility would be subject to holdover penalties. *Id.* ¶ 15. The Complaint alleges that by December 31, 2022, RBW no longer stored EMG's goods and ceased performing services under the Agreement. *Id*. ¶ 16.

Based on the above, EMG alleges that RBW violated the Agreement by failing to provide sufficient notice of termination. Compl. ¶ 18. EMG further alleges that, as a result of RBW's

purported failure to provide sufficient notice of termination of the Agreement, EMG incurred damages related to finding another storage and service providers for its goods. *Id.* ¶¶ 19-20. EMG also claims damages stemming from "RBW's negligent performance and willful conduct" and alleged deficient performance related to storing, labeling, and shipping EMG's goods. *Id.* ¶¶ 20, 25. The Complaint pleads a single claim against RBW for breach of contract. *Id.* ¶¶ 21-25.

**B.** **THE ABSENCE OF ANY CONTACTS BY RBW WITH WISCONSIN**

Contrary to the erroneous Complaint allegations, RBW has no substantial, continuous, or ongoing contacts with the State of Wisconsin. Declaration of Frank Anderson ("Anderson Decl.") ¶ 4. RBW is not organized or headquartered in Wisconsin; it is a Georgia company, headquartered in Augusta, Georgia. *Id.* ¶ 5. RBW is not registered or licensed to transact business in Wisconsin, and it does not transact any business in Wisconsin. *Id.* ¶ 6. RBW has no employees, officers, or directors located in Wisconsin, nor does RBW have a designated agent for service of process in Wisconsin. *Id.* ¶ 7.

RBW does not own or lease any facilities, offices, or other real property in Wisconsin. Anderson Decl. ¶ 8. Nor does RBW maintain any office, address, or telephone number in Wisconsin. *Id.* ¶ 9. RBW does not maintain any bank accounts or assets in Wisconsin, nor does it pay taxes or file tax returns in Wisconsin. *Id.* ¶ 10. RBW does not own or hold any ownership interest in any entity that is headquartered in Wisconsin (*id.* ¶ 11), nor does RBW house any network servers or host any software in Wisconsin, (*id.* ¶ 12). RBW does not direct any advertising or promotional content towards residents of the State of Wisconsin. Anderson Decl. ¶ 13.

The Complaint conclusorily states that "RBW does substantial business in Wisconsin, including having attending meetings on multiple occasions at EMG's offices in Green Bay, Wisconsin and engaging in numerous communications and correspondences with EMG's employees in Wisconsin from 2019 through 2022." Compl. ¶ 5. As set forth in the Agreement,

4

however, RBW's entire relationship with EMG was limited to RBW providing certain storage and related services at RBW's storage facilities in Georgia at its Pooler, Georgia Facility and Savannah, Georgia Facility. Anderson Decl. ¶ 14 ; *see also* Compl. ¶¶ 7-12. EMG initiated the parties' business relationship by reaching out to RBW to inquire whether RBW could provide certain storage services in Georgia. Anderson Decl. ¶ 15. RBW did not solicit EMG's business in Wisconsin, nor did RBW travel to Wisconsin to negotiate any of the Agreement's terms or performances.[1] *Id.* In sum, the only link between RBW and the State of Wisconsin is the mere fact that EMG is located there. Compl. ¶ 17.

## STANDARDS OF REVIEW

Lack of Personal Jurisdiction. Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move for dismissal when the Court lacks personal jurisdiction. Federal courts may not exercise jurisdiction over an out-of-state defendant unless "permitted by the forum state's long arm statute and by the Due Process Clause." *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019). Once the defendant moves to dismiss the complaint under Rule 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Rsch*. *Found v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If the defendant has submitted evidence that contradicts the jurisdictional allegations in the Complaint, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Rsch.*, 338 F.3 at 783. The evidence submitted challenging personal jurisdiction may include declarations and other

---

[1]     While some RBW personnel briefly visited EMG's offices in Green Bay, Wisconsin one time on June 18, 2019, this was purely an informational visit in which EMG generally demonstrated its operations and business. Anderson Decl. ¶ 17. This visit was before the parties entered into the Agreement, and during the visit, there were no discussions or negotiations concerning the terms of the Agreement, or any discussion of performances under the Agreement. *Id.*

supporting materials. *Id*. A court may "accept as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff." *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

Venue Transfer. Under 28 U.S.C. § 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought *or to any district or division to which all parties have consented*." 28 U.S.C. § 1404(a) (emphasis added). Generally, a motion for transfer of venue under § 1404(a) requires a court to balance multiple factors, but the Supreme Court has instructed that, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in the clause." *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62-63 (2013); *see also In re Ryze Claims Solutions, LLC*, 968 F.3d 701, 704 (7th Cir. 2020); *In re Mathias*, 867 F.3d 727, 731 (7th Cir. 2017); *Watch & Accessory Co. v. Garmin Int'l*, Inc., No. 21-C-382, 2021 WL 6197892, at *2 (E.D. Wis. Dec. 30, 2021) (J. Griesbach); *Daniels v. Painter*, No. 15-CV-1334, 2016 WL 3034246, at *3 (E.D. Wis. May 27, 2016) (J. Griesbach). In such case, a plaintiff's choice of forum is given no weight and a court "must deem the private interest factors to weigh entirely in favor of the preselected forum." *Atlantic Marine*, 571 U.S. at 64. Only "extraordinary circumstances unrelated to the convenience of the parties" will justify denying a motion to enforce a forum selection clause. *Id*.

## **ARGUMENT**

## I.    **THE COURT LACKS PERSONAL JURISDICTION OVER RBW**

Personal jurisdiction is "an essential element of the jurisdiction of a district…court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (alteration in original) (citation omitted). Under Federal Rule of Civil Procedure 4(k), personal jurisdiction over non-resident defendants may be exercised only to the

extent authorized by the laws of the state in which the federal court sits. *See Shepherd Invs. Int'l, Ltd. v. Verizon Commc'ns Inc.*, 373 F. Supp. 2d 853, 860 (E.D. Wis. 2005). In Wisconsin, the plaintiff must satisfy a two-part analysis to establish personal jurisdiction.[2] *See* Wis. Stat. § 801.05; *see also Kopke v. A. Hartrodt, S.R.L.*, 629 N.W.2d 662, 667-68 (Wis. 2001). First, Wisconsin's long-arm statute must encompass the defendant's conduct. Wis. Stat. § 801.05. Second, even if the defendant's conduct is encompassed by the long-arm statute, the exercise of personal jurisdiction must comport with principles of due process. *See Advance Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014). Failure to prove either of these elements precludes the court from exercising jurisdiction and requires dismissal. *See, e.g., Miron Constr. Co., Inc. v. Dustex Corp.*, No. 14-C-306, 2014 WL 3043977, at *4 (E.D. Wis. 2014) (Griesbach, J.) (dismissing the case for lack of personal jurisdiction where the alleged conduct was not encompassed by the Wisconsin long-arm statute); *Marvel Mfg. Co. Inc. v. Koba Internet Sales, LLC*, No. 11-C-00961, 2012 WL 2466772, at *7 (E.D. Wis. 2012) (Griesbach, J.) (dismissing for lack of personal jurisdiction where the exercise of jurisdiction would not comport with principles of due process).

Personal jurisdiction has two forms: (1) general, "all purpose" jurisdiction and (2) specific, case-linked jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014); *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010); *Kubin-Nicholson Corp. v. Gillon*, 525 F. Supp. 2d 1071, 1073 (E.D. Wis. 2007)

---

[2]     Although the Seventh Circuit has "merg[ed] the statutory and constitutional inquiries into one, *see Felland v. Clifton*, 682 F.3d 665, 678 (7th Cir. 2012), courts following *Felland* have expressed doubt about that holding, noting that Wisconsin courts themselves do not collapse the statutory and constitutional analyses." *University Acct. Serv. LLC v. ScholarChip Card LLC*, No. 17-CV-901-JPS, 2017 WL 4877418, at *4, n.3 (E.D. Wis. Oct. 27, 2017) (dismissing complaint because "constitutional considerations alone compel[led] dismissal" and "declin[ing] to address the statutory question").

(under Wisconsin's long-arm statute, "a plaintiff can establish personal jurisdiction by showing either specific or general jurisdiction"). Neither general nor specific jurisdiction exists here.

### A. General jurisdiction is lacking

General jurisdiction refers to a court's power to adjudicate claims over a defendant even if the claims are unrelated to the defendant's forum activities. *See Purdue Rsch.*, 338 F.3d at 787. But "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Accordingly, "the constitutional requirement for general jurisdiction is 'considerably more stringent' than that required for specific jurisdiction." *Purdue Rsch.*, 338 F.3d at 787 (citations omitted). Thus, general jurisdiction requires a foreign defendant corporation's contacts with the forum state to be "so 'continuous and systematic' as to render it essentially at home in the forum State." *Daimler*, 571 U.S. at 139 (citation omitted); *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Court*, 141 S. Ct. 1017, 1024 (2021) (noting the forums where a corporation is subject to general jurisdiction "are its place of incorporation and principal place of business").

A corporate defendant is only "at home" in a forum where it (1) is incorporated or has its principal place of business, or (2) in "exceptional case[s]," conducts state operations that are "so substantial and of such a nature as to render the corporation at home" in the forum. *See Daimler*, 571 U.S. at 137 n. 19 and 139; *see also University Acct. Serv.*, 2017 WL 4877418, at *5 ("Such robust contacts usually appear only in the corporation's state of incorporation and in its principal place of business"). When analyzing whether an out-of-state company has "continuous and systematic" contacts with Wisconsin that render it "essentially at home" there, courts consider (1) the location of the defendant's primary place of business and whether it is registered to conduct business or has a registered agent within the forum state, and/or (2) whether the defendant has known agents, offices, facilities, real property, personnel, employees, pays taxes, bank accounts,

solicits business or advertises, houses any network servers or hosts any software there, or conducts business within the forum state. *See, e.g., University Acct. Serv.*, 2017 WL 4877418, at *6 (holding defendant was "undoubtedly" not subject to general jurisdiction in Wisconsin because it "was not organized here, has no office or other property here, has no registered agent here, does not house any servers or host any software here, has no financial accounts here, and indeed has no lasting connection to Wisconsin outside its relationship with the plaintiff").

As a threshold matter, the Complaint correctly pleads that RBW "is a Georgia limited liability company with a principal place of business located at 326 Prep Phillips Drive, August, Georgia 30901." Compl. ¶ 4. Therefore, EMG concedes that RBW is not a business entity organized in Wisconsin, nor is RBW's primary place of business in Wisconsin.

Nor does the Complaint plead any facts to support that this is an "exceptional case" wherein RBW's ongoing contacts with Wisconsin are so substantial and continuous that RBW is "at home" in Wisconsin—and no such facts exist. Instead, the Complaint contains only conclusory allegations that "RBW is engaged in substantial and not isolated activities within this state" and "RBW does substantial business in [Brown] [C]ounty." Compl. ¶¶ 5-6. The reason for the lack of any factual specificity to support these pleading allegations is manifest. RBW has no connection to or contacts with the state at all:

- RBW is neither organized nor headquartered in Wisconsin. Anderson Decl. ¶ 5. It is a Georgia limited liability company, headquartered in Augusta, Georgia. *Id*.

- RBW is not registered or licensed to transact business in Wisconsin, and it does not transact any business in Wisconsin. *Id*. ¶ 6.

- RBW has no employees, officers, or directors located in Wisconsin. *Id*. ¶ 7. Nor does it have a designated agent for service of process in Wisconsin. *Id*.

- RBW does not own or lease any facilities, offices, or other real property in Wisconsin. *Id*. ¶ 8. Nor does RBW maintain any office, address or telephone number in Wisconsin. *Id*. ¶ 9.

- RBW does not maintain any bank accounts in Wisconsin, nor does it pay taxes or file tax returns in Wisconsin. *Id.* ¶ 10.

- RBW does not own or hold any ownership interest in any entity that is headquartered in Wisconsin (*id*. ¶ 11), nor does house any network servers or host any software in Wisconsin (*id.* ¶ 12).

- RBW does not direct any advertising or promotional towards residents of the State of Wisconsin. *Id.* ¶ 13.

As demonstrated by the above facts, RBW is not "essentially at home" in Wisconsin. Therefore, there is no legal or factual basis for this Court to exercise general jurisdiction over it.

**B.      Specific jurisdiction is lacking**

Specific jurisdiction refers to a court's power over "disputes that 'arise out of or are connected with the activities within the state.'" *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) (Kennedy, J., plurality op.). Thus, jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy.'" *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (alteration in original). Additionally, for a plaintiff to establish specific jurisdiction, a defendant "must take some act by which it purposefully avails itself of the privilege of conducting activities in the forum State." *Ford Motor Co.*, 141 S. Ct. at 1024 (internal citation and quotation omitted). In other words, EMG must show that RBW "deliberately 'reached out beyond' its home—by, for example, 'exploiting a market' in the forum State or entering a contractual relationship centered there." *Id.* at 1025 (quoting *Walden*, 571 U.S. at 284). These contacts must be "defendant's own choice." *Id.* at 1025.

As this Court has held, specific jurisdiction "is appropriate" when:

(1) the defendant "purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state;" (2) "the alleged injury [arose] from the defendant's forum-related activities;" and (3) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice."

*Dissolved Air Floatation Corp. v. Kothari*, No. 14-C-1223, 2016 WL 5376192, at *2 (E.D. Wis. Sept. 26, 2016) (J. Griesbach) (quoting *Felland*, 682 F.3d at 673). Plaintiff fails on each factor.

1. **FACTOR NO. 1 FAILS: RBW has not purposefully availed itself of the privilege of conducting business in Wisconsin or purposefully directed its activities at this state**

Even if the cause of action arose out of the "general relationship between the parties," the action must "*directly arise* out of the specific contacts between the defendant and the forum state." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997). In other words, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *In re Sheehan*, 48 F.4th 513, 523 (7th Cir. 2022) (quoting *Walden*, 571 U.S. at 285). The Complaint fails to plead sufficient facts that RBW purposely availed itself of conducting business in Wisconsin for at least three reasons.

First, the parties' relationship and the Agreement are centered solely on performances ___*in Georgia*___. "Standing alone, the fact that a foreign party has formed a contract with an in-state party is often insufficient to supply the minimum contacts required by the Constitution." *Philos Techs., Inc. v. Philos & D., Inc.*, 802 F.3d 905, 914 (7th Cir. 2015). Instead, courts must consider other links to the forum state, such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing may demonstrate that the defendant has purposefully availed itself of the forum." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)).

The Agreement is exclusively related to performances by RBW in Georgia. Specifically, the Agreement involved RBW providing certain storage and related services, all of which physically took place at the Pooler, Georgia Facility or the Savannah, Georgia Facility. Nothing in the Agreement references Wisconsin, much less a performance in Wisconsin. Accordingly,

none of EMG or RBW's "prior negotiations and contemplated future consequence" or "course of dealing" demonstrated RBW purposefully availing itself of Wisconsin.

Second, the Complaint's formulaic assertions that RBW engaged "in numerous communications and correspondence with EMG's employees in Wisconsin from 2019 through 2022" are inadequate to justify the exercise of specific personal jurisdiction. Generally, no specific jurisdiction exists by virtue of non-substantial communications purposefully directed to the forum state." *Moderson v. MFK Mobilelink Wisconsin, LLC*, No. 21-CV-504-JPS, 2022 WL 4382181, at *8 (E.D. Wis. Sept. 22, 2022); *see also Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) ("[O]rdinarily, 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state'"); *see also Gorokhovsky v. Stefantsova*, No. 19-CV-453-JPS, 2019 WL 3502921, at *4 (E.D. Wis. July 31, 2019), *aff'd*, 825 F. App'x 375 (7th Cir. 2020) (finding that defendant's exchange of correspondence with plaintiff within Wisconsin was not sufficient basis for specific general jurisdiction); *Cote v. Wadel*, 796 F.2d 981, 984 (7th Cir. 1986) ("letters and phone calls that passed between [Plaintiff] and [non-resident defendant] is not enough to close the gap" in poor minimum contacts). In order to justify specific personal jurisdiction, the communication must create a "substantial connection" with the forum (*Burger King*, 471 U.S. at 475, n.19), and demonstrate a "purposeful invocation of the benefits and protections of the forum state." *Moderson*, 2022 WL 4382181, at *8. Courts give "significant" weight to whether the defendant solicited the plaintiff in a minimum-contacts analysis (*Daniel J. Hartwig Assocs. v. Kanner*, 913 F.2d 1213, 1218-19 (7th Cir. 1990)), and also consider whether the defendants initiated the contractual relationship with a Wisconsin business, typically intending that the plaintiff/Wisconsin business perform the work in Wisconsin. *See, e.g.*, *Madison Consulting Grp. v. State of S.C.*, 752 F.2d 1193 (7th Cir.

1985) ("The question of which party initiated or solicited a business transaction has long been considered pertinent to the constitutional propriety of personal jurisdiction in a suit arising out of the transaction"); *see also Telco Leasing, Inc. v. Marshall County Hospital,* 586 F.2d 49, 52 (7th Cir. 1978) (citing the fact that the defendant did not initiate the transaction as a factor militating against personal jurisdiction).

Applied here, the Complaint contains no specific factual allegations that any of RBW's communications with EMG were sufficiently significant to somehow justify specific personal jurisdiction over RBW. To this point, EMG does not allege that any of these "numerous communications or correspondence" involved RBW soliciting and/or initiating the parties' contractual relationship within Wisconsin. Quite the opposite, EMG actually initiated the parties' business relationship by reaching out to RBW. *See* Anderson Decl. ¶ 15. Moreover, the Complaint is devoid of any facts that RBW sought any work or performance in Wisconsin that resulted in the "purposeful invocation" of the "benefits and protections" of this state—again, EMG specifically reached out to RBW about providing storage services in Georgia. *Id.* Accordingly, any normal exchange of phone calls, emails, or other correspondence between the parties hardly justifies the exercise of specific personal jurisdiction over RBW—especially when RBW's relationship with EMG was limited to, and centered on, RBW providing storage facilities and related services only in Georgia.

Third, the allegation in the Complaint that RBW "attend[ed] meetings on multiple occasions at EMG's offices in Green Bay, Wisconsin" is not sufficient to plausibly plead that RBW is subject to specific personal jurisdiction in Wisconsin. Visits as "matters of convenience" or an "informational visit" by a defendant to a plaintiff in the plaintiff's forum do not constitute "substantial contacts" with the forum unless they related to the "formation or performance of the

contract" at issue, especially "during negotiations" that "were significant in the formation of the contract." *Wisconsin Elec. Mfg. Co. v. Pennant Prod., Inc.*, 619 F.2d 676, 678 (7th Cir. 1980); *see also Philos Techs., Inc.*, 802 F.3d at 915 (finding Korean defendant's trip "informational visit" to forum state was not sufficient to confer personal jurisdiction because "neither negotiations nor solicitation of a deal took place"); *Nucor Corp. v. Aceros Y Maquilas de Occidente*, S.A. de C.V., 28 F.3d 572, 581 (7th Cir. 1994) ("a defendant's participation in substantial negotiations conducted in the forum state leading to the contract at issue is a significant basis for personal jurisdiction").

EMG does not allege that RBW's visits to Green Bay were "during negotiations" that "were significant in the formation of the contract." Indeed, the reason the Complaint does not contain such factual allegations is simply because such facts do not exist. On the contrary, RBW's manager recalls only a single visit to Green Bay in 2019—before the parties entered into the Agreement—in which EMG generally demonstrated its operations and business. *See* Anderson Decl. ¶ 17. This was not a visit "to negotiate" with EMG "about performance" under the Agreement (*see Wisconsin Elc. Mfg. Co*, 619 F.2d at 678), but was instead a "purely informational visit" unrelated to the negotiation of the Agreement. *See* Anderson Decl. ¶ 17; *see also Philos Techs., Inc.*, 802 F.3d at 915 (finding "informational visit" to forum state before contract at issue was in effect was not sufficient to confer personal jurisdiction because "neither negotiations nor solicitation of a deal took place"). Such a tenuous connection to Wisconsin is hardly sufficient to justify the exercising of specific personal jurisdiction over RBW.

2.     <u>**FACTOR NO. 2 FAILS**</u>**: EMG's alleged injury does not arise from RBW's Wisconsin-related activities**

This entire lawsuit concerns EMG's alleged injury arising from RBW's conduct that occurred ***<u>in Georgia</u>***. EMG claims it suffered damages as a result of RBW's alleged violation of

the Agreement stemming from (1) RBW purportedly not providing sufficient notice of termination related to storage and services at the Savannah, Georgia Facility, requiring EMG to find an alternative third-party storage and service provider (Compl. ¶¶ 18-20), and (2) RBW's alleged failure to "adequately perform services related to the storage" (*id.* ¶ 25), at the Pooler, Georgia Facility and the Savannah, Georgia Facility. All of this alleged conduct, as plainly alleged in the Complaint, took place in the State of Georgia. That Plaintiff is located in Wisconsin is irrelevant to the jurisdictional analysis. *See Dissolved Air Flotation*, 2016 WL 5376192, at *3 (noting the Court is "not concerned with location of any harm Plaintiff[] might have experienced"). As such, EMG's alleged injuries did not arise from RBW's Wisconsin-related activities.

3. **FACTOR NO. 3 FAILS**: **The exercise of jurisdiction over RBW does not comport with traditional notions of fair play and substantial justice**

The following factors are relevant in determining whether the exercise of personal jurisdiction over an out-of-state defendant would offend traditional notions of fair play and substantial justice: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477.

Based on the facts identified herein, it certainly does not and would not comport "with fair play and substantial justice" for RBW to be haled into this Court. RBW is headquartered in Augusta, Georgia, which is more than 1,000 miles from the courthouse for the Eastern District of Wisconsin. *See* Anderson Decl. ¶ 5. RBW owns no property or businesses in Wisconsin, nor does it maintain any offices, employees, or bank accounts in this state. *Id.* ¶¶ 8-11. In fact, RBW does not transact any business, nor is registered to conduct business in Wisconsin. *Id.* ¶¶ 6-7.

Ultimately, the only link between RBW and Wisconsin is that EMG happens to be a Wisconsin company. *Id.* ¶ 16.

The unsupported nature of suing RBW in Wisconsin—and ***Georgia's*** central importance to this dispute—is also reflected in the Agreement itself. Tellingly, EMG already expressly consented to being haled into the state and federal courts of Georgia, as the Agreement contains a forum selection clause that provides "[a]ny lawsuit or other action involving any dispute, claim, or controversy relating in any way to this Agreement may be brought in the appropriate state or federal court in the state where the FACILITIES are located." Agreement § 24. The reference to "FACILITIES" is specifically defined as the Pooler, Georgia Facility and the Savanah Georgia Facility. *See* Compl. Ex. B (Amendment) § 1. Forum-selection clauses like the Agreement's show a manifestation of "parties' consent to jurisdiction in the event that proceedings are instituted in a particular forum." *Carbo v. Colonial Pac. Leasing Corp.*, 592 S.E.2d 445, 447 (Ga. App. 2003); *see also Converting/Biophile Lab'ys, Inc. v. Ludlow Composites Corp.*, 722 N.W.2d 633, 640-41 (Wis. App. 2006) (explaining that permissive forum-selection clauses shows a party agrees to submit to that specific forum's jurisdiction).

Under these circumstances, a Wisconsin court's exercise of specific jurisdiction over RBW does not and cannot pass constitutional muster. This is especially true when EMG already expressly consented to the jurisdiction of the State of Georgia wherein the parties' relationship, performances, and dispute exclusively arose and occurred.

## C. **EMG is not entitled to jurisdictional discovery**

RBW anticipates that, faced with the inadequacy of its jurisdictional allegations, EMG will try to shore them up with a request for jurisdictional discovery. Such a request should be denied since EMG falls well short of meeting the requisite standard. At a minimum, before such discovery is permitted, EMG "must establish a colorable or prima facie showing of personal jurisdiction

before discovery should be permitted." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). "[A] plaintiff's discovery request will…be denied if it is only based upon bare, attenuated, or unsupported assertions of personal jurisdiction." *Kimberly-Clark Worldwide, Inc. v. Fameccanica Cata SpA*, No. 10-C-0917, 2011 WL 2634287, at *4 (E.D. Wis. July 5, 2011) (Griesbach, J.); *Sullivan v. Sony Music Ent.*, No. 14-CV-731, 2014 WL 5473142, at *5 (N.D. Ill. Oct. 29, 2014) ("Jurisdictional discovery is not warranted where jurisdiction is based only upon unsupported assertions of personal jurisdictional or where the defendant has provided affirmative evidence that refutes the plaintiff's assertion of jurisdiction."). "It is not appropriate to allow the plaintiff to go on a fishing expedition when it did not have a good faith basis for believing before it filed suit that [the defendant] could be sued here." *Genetic Techs. Ltd. v. Interleukin Genetics Inc.*, No. 10-CV-69-BBC, 2010 WL 3122304, at *4 (W.D. Wis. Aug. 9, 2010).

EMG offers nothing more than bare, attenuated, and unsupported assertions of personal jurisdiction in the Complaint, each of which have been rebutted by RBW. EMG's allegations are not enough to establish a prima facie showing of personal jurisdiction so as to entitle EMG to jurisdictional discovery. Nor can EMG demonstrate that jurisdictional discovery would allow it to uncover any potential minimum contacts that would support the Court's exercise of jurisdiction over RBW. Accordingly, jurisdictional discovery should not be permitted and this lawsuit should be dismissed for lack of personal jurisdiction

## II. ALTERNATIVELY, THE COURT SHOULD TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF GEORGIA

In the event the Court declines to dismiss this lawsuit for lack of personal jurisdiction, the Court should transfer this lawsuit to the United States District Court for the Southern District of

Georgia pursuant to 28 U.S.C. § 1404(a). As explained above, EMG already consented to the jurisdiction and venue of courts where the "FACILTIES are located." Agreement § 24. The Pooler, Georgia Facility and the Savannah, Georgia Facility are both located within the Southern District of Georgia. Accordingly, in light of EMG's clear and express consent to the venue of Georgia federal courts, the Court should transfer venue of this case to the Southern District of Georgia wherein the disputed facilities are located. *See Van Elzen v. Cody Askins LLC*, No. 22-C-840, 2022 WL 17417584, at *3 (E.D. Wis. Dec. 5, 2022) (J. Griesbach) (granting motion to transfer venue to the Western District of Missouri based on the plaintiff's clicking link that assented to terms and conditions which contained forum-selection clause in favor of Missouri).

In addition to EMG already assenting to jurisdiction of Georgia courts, the Southern District of Georgia is a more convenient forum. The Complaint's allegations concern RBW's purported deficient performance related to "the storage, handling and shipment of EMG's goods." Compl. ¶¶ 21-25. All of RBW's witnesses pertaining to its performance under the Agreement are located in Georgia. *See* Anderson Decl. ¶ 18. Further, all of RBW's documents and records relating to the Agreement and EMG are located in Georgia. *Id.* Other evidence relevant to the fact-specific allegations made by EMG to support its breach of contract claim are located in Georgia, including the equipment and materials used to store, label, and ship EMG's goods at the Pooler Georgia Facility and the Savannah Georgia Facility. *Id.* Any third-party documents and deposition testimony relevant to the Agreement and the parties' dispute will most assuredly come from third parties in Georgia and not Wisconsin. *Id.* ¶ 19. Finally, both parties will most likely retain expert witnesses to inspect the processes and equipment used at the facilities (and the facilities themselves), and it is incredibly costly and inefficient to have these expert witnesses travel to the Upper Midwest to testify at trial.

The "interest of justice" also favor a venue transfer. Under this factor, the court must consider such concerns as "ensuring a speedy trial, trying related litigation together, and having a judge familiar with the applicable law try the case." *Fondrie v. Casino Res. Corp.*, 903 F. Supp. 21, 24 (E.D. Wis. 1995). The median time from filing to disposition for civil cases is essentially the same for the Eastern District of Wisconsin (9.5 months) and Southern District of Georgia (10.6 months).[3] More importantly, the case is governed by Georgia law under the Agreement. *See* Agreement § 24 ("This Agreement and the legal relationship between the Parties hereto shall be governed by and construed in accordance with the substantive laws of the state where the FACILITIES are located"). Naturally, the Southern District of Georgia is more familiar with the state laws of Georgia, so this factor also favors a venue transfer.

In the event the Court declines to dismiss this case for lack of personal jurisdiction, the Court should transfer the case to the Southern District of Georgia. Transferring this matter pursuant to the valid forum selection clause and other factors "would promote 'the interest of justice,'" which is "the overarching consideration under § 1404(a)." *Atlantic Marine*, 571 U.S. at 63.

## CONCLUSION

For the reasons set forth herein, RBW respectfully requests that this Court grant its motion to dismiss for lack of personal jurisdiction. Alternatively, if not dismissed, RBW respectfully requests that the Court transfer this action to the United States District Court for the Southern District of Georgia.

---

[3] *See* Combined Civil and Criminal Federal Court Management Statistics (September 30, 2022), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0930.2022.pdf. (last accessed on Feb. 21, 2023).

Dated: February 24, 2023

Respectfully submitted,

/s/ *Jason R. Asmus*
Jason R. Asmus, Atty. No. 1096120
TAFT STETTINIUS & HOLLISTER LLP
2200 IDS Center
80 South 8th Street, Suite 2200
Minneapolis, MN 55402
P: 612-977-8400
F: 612-977-8650
jasmus@taftlaw.com

*Attorneys for Defendant ONL-RBW Logistics, LLC*