UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

ENGLEWOOD MARKETING GROUP, INC.,

     Plaintiff,     Case No. 23-CV-227

 v.

ONL-RBW LOGISTICS, LLC,

     Defendant.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER VENUE**

   Plaintiff Englewood Marketing Group, Inc. ("EMG"), by its attorneys, Godfrey & Kahn, S.C., submits this memorandum of law in opposition to Defendant's Motion for Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue. (ECF No. 4.)

## INTRODUCTION

   Defendant ONL-RBW Logistics, LLC ("RBW") erroneously claims that "the only connection between the matters at issue in this lawsuit and the State of Wisconsin is that EMG is located in Wisconsin." (ECF No. 5 at 1.) In arriving at this statement, RBW downplays the fact its executives visited EMG at its Green Bay location in 2019, and totally ignores a second visit to Green Bay by an RBW employee in 2020 after the August 1, 2019 contract (the "Agreement") was executed. In June of 2019 several employees of RBW visited Wisconsin and conducted meetings with EMG to discuss the specifics of how RBW could provide services for EMG. These meetings included a formal presentation tailored to EMG's operations and detailed discussions concerning systems integration between the two companies. Beyond that, after the parties executed the

Agreement, in 2020 RBW sent its Customer Service Manager, Chris Malcom, to Green Bay for three days of training at EMG. Additionally, RBW directed numerous emails and telephone calls to various EMG employees located in Green Bay, Wisconsin for a period of years.

Thus, while it is true that the services RBW agreed to perform for EMG were to be performed in Georgia, RBW is wrong in asserting that the only connection between this matter in Wisconsin is the fact EMG is based in Green Bay. Because RBW was engaged in substantial and not isolated activities in Wisconsin through multiple visits to EMG and numerous communications with EMG, through which it pursued and maintained a business relationship, and the exercise of jurisdiction over RBW does not offend traditional notions of fair play and substantial justice, the Court should find that specific personal jurisdiction exists over RBW and deny RBW's motion to dismiss.

The Court should also deny RBW's motion in the alternative to transfer this matter to the Southern District of Georgia because the consent to jurisdiction to the courts of Georgia in the Agreement is not a mandatory forum selection clause, and because the other *forum non conveniens* factors do not override EMG's choice of forum.

## FACTUAL BACKGROUND

*RBW's Two-Day Meeting with EMG in Green Bay*

The sole factual support RBW provides for its motion to dismiss comes in the form of a declaration from Frank Anderson, who is RBW's manager and an owner of one of the entities that comprises RBW. According to Mr. Anderson, RBW did not "travel to Wisconsin to negotiate any of the Agreements, terms, or performances." (ECF No. at 3.) Mr. Anderson goes on to note that he recalls a visit to EMG in 2019, specifically that "RBW personnel briefly visited EMG at its offices in Green Bay, Wisconsin one time on June 18, 2019 prior to the Agreement being

2

negotiated, drafted or executed." (Id.) Mr. Anderson characterizes the trip as "purely an informational visit in which EMG generally demonstrated its operations and business." (Id.) Mr. Anderson claims that the visit did not include any "discussions or negotiations concerning the terms of the Agreement, or any discussion of performances under the Agreement." (Id.) Nowhere in his declaration does Mr. Anderson discuss any subsequent visit by RBW personnel to EMG as the parties performed the Agreement, or any communications between the parties over the years.

Contrary to Mr. Anderson's characterizations of the 2019 visit by RBW to Green Bay, the discussions between the two companies in Green Bay were plainly part of an effort by RBW to solicit EMG's business. The details of this visit – which escape Mr. Anderson – are provided by the declaration of Denise Lawniczak, EMG's Corporate Warehouse Manager.

In June 2019, executives and other employees from RBW and EMG began discussing potential topics for meetings to occur during RBW's visit that month. (Decl. of Denise L. Lawniczak ("Lawnizack Decl.") at ¶ 3.) A spreadsheet sent by Robert Willert, RBW's COO, to an employee of EMG contained a number of topics to discuss with detailed areas for discussion. (Id. ¶¶ 3-4.) For example, the list of topics included "Labeling requirements for outbound shipments," "Required certifications for ONL-RBW," "Report requirements for EMG and frequency (weekly, monthly, etc.)," and "Specific EDI [i.e., Electronic Data Interchange] requirements." (Lawnizack Decl. Ex. B at 2-4.) On June 18, 2019 through June 19, 2019, various employees of RBW visited EMG in EMG's Green Bay location. (Lawnizack Decl. ¶ 5.)

In preparation for RBW's visit, EMG prepared an agenda covering the two days of meetings. (Id. ¶ 10 & Ex. D.) The agenda called for meetings all day on June 18, 2019, followed by a dinner. On June 19, 2019, before the formal end of the scheduled visit the agenda called for

3

a "General Discussion" to "Answer additional questions and discuss timelines." (Lawnizack Decl. Ex. D at 2.) The agenda is reproduced below:

 

**EMG-USA & ONL-RBW Logistics Meeting**

| | Tuesday 6/18/2019 |
|---|---|
| 9:00 am to 10:00 am | **Introductions** <br> General discussion with all EMG-USA and ONL-RBW team members. |
| 10:00 am to 11:30 am | Meeting with EMG Senior Executives & Owners of ONL-RBW |
| 10:00 am to 11:00 am | **Facility Tour** <br> • All ONL-RBW team members except ownership. |
| 11:30 am to 2:00 pm (break in between for lunch) | **Operations Meeting Group** <br> • Denise Lawniczak, EMG-USA GB Warehouse Manager <br> • Deanne Vande Velden, EMG-USA Customer Service Manager <br> • David Wirthwein, EMG-USA E-Commerce Sales Director <br> • Bob Willert, ONL-RBW Chief Operations Officer <br> • Ken Saunders, EMG-USA Logistics Manager <br> • Aaron Ferguson, ONL-RBW Business Analyst / Project Manager <br> **IT Meeting Group** <br> • Jacob Bright, EMG-USA IT Director <br> • Tony Calabrase, ONL-RBW Vice President of Technology <br> • Kai Timmermann, ONL-RBW Executive Vice President of IT & Warehouse Operations <br> Additional Meeting Groups (as needed) |
| 2:30 pm to 5:00 pm | **Breakout Sessions** <br> Port Usage Incentives Discussion <br> Additional Facility Tour for ONL-RBW Ownership <br> Debrief |
| 6:00 pm until | Dinner |

| | Wednesday 6/19/2019 |
|---|---|
| 9:00 am to 11:00 am | **Purchasing and Forecast Meeting Group** <br> • Todd Smits, EMG-USA Customer Account Director <br> • Ken Saunders, EMG-USA Bloomington Warehouse Manger <br> • Bob Willert, ONL-RBW Chief Operations Office <br> • Aaron Ferguson, ONL-RBW Business Analyst / Project Manager <br> • Plinio Pla, ONL-RBW Process Support Specialist |
| 12:00 pm to 2:00 pm | **General Discussion** <br> Answer additional questions and discuss timelines. <br> • Ken Saunders, EMG-USA <br> • Bob Willert, ONL-RBW <br> • Aaron Ferguson, ONL-RBW |
| 3:00 pm | **End of Visit** |
| 3:00 pm to 4:00 pm | **Ownership Comments (Internal EMG-USA Call)** |

(Lawnizack Decl. Ex. D.)

The visit by RBW to EMG's facilities in Green Bay began as scheduled on June 18, 2019. At a meeting between the two companies that day, RBW provided a presentation to EMG concerning RBW's company. (Id. ¶ 6.) RBW handed out a hard copy of its presentation to various EMG employees, including Ms. Lawniczak. (Id.) A copy of the presentation provided by RBW is attached to Ms. Lawniczak's declaration as Exhibit C. (Id.) The document is tailored to EMG and plainly constitutes a pitch for EMG's business. The first page of the presentation contains both EMG and RBW's names. (Lawniczak Decl. Ex. C at 1.) On the next page of the document,

4

RBW indicates that its "simple purpose" is "to simplify your supply chain." (Id. at 2.) The presentation provides detailed information concerning RBW's corporate leadership, capabilities, processes, and technology. It ends with the following note: "We look forward to working with you soon!" (Id. at 40.)

After the RBW pitched its business to EMG with its presentation, Ms. Lawniczak lead a tour of EMG's Green Bay warehouse. (Lawniczack Decl. at ¶ 8.) Ms. Lawncizak took several RBW employees through EMG's warehouse to better understand its operations. (Id.) Once the tour concluded, various EMG and RBW employees broke off into a breakout session to discuss more detailed operational issues. (Id. at ¶ 9.)

***RBW's Second Multi-Day Visit to EMG in Green Bay***

Once the Agreement was signed in 2019, RBW later arranged to have one of its employees, Chris Malcolm, visit EMG's facility in Green Bay. Mr. Malcolm visited EMG from January 28 through January 30, 2020. (Id. ¶ 11.) Mr. Malcolm stated during his visit that he was RBW's Customer Service Manager. (Id. ¶ 12.) EMG employees provided Mr. Malcolm with training on various EMG systems and procedures during Mr. Malcolm's visit, all intended to further RBW's ability to perform the contract with EMG. (Id.)

By March of 2020, Ms. Lawniczak was the main point of contact between EMG and RBW. She states that her contact with RBW regarding its performance of services for EMG was continuous. (Id. ¶ 13.) She communicated on at least a weekly basis by email or phone from her office in Green Bay with RBW's personnel. (Id.)

5

28970053.3

# ARGUMENT

## I. EMG HAS MADE A *PRIMA FACIE* SHOWING THAT THE COURT HAS PERSONAL JURISDICTION OVER RBW

In its Complaint, EMG alleged that RBW did substantial business in Wisconsin by attending meetings on multiple occasions at EMG's offices in Green Bay, Wisconsin, and by engaging in numerous communications and correspondences with EMG's employees in Wisconsin. (Compl. ¶ 5.) The specifics of these points of contact between RBW and Wisconsin are spelled out in Ms. Lawniczak's declaration. In light of those facts, EMG has made a *prima facie* showing that the Court has personal jurisdiction over RBW.

Where a federal court's subject-matter jurisdiction is based upon diversity of citizenship, as here, the court has personal jurisdiction "only if a court of the state in which it sits would have such jurisdiction." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997) (quoting *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995)). As this Court is aware, the personal jurisdiction analysis involves two-fold inquiry: (1) do the defendant's acts fall within the applicable long-arm statute, and (2) does the exercise of jurisdiction over the defendant comport with the requirements of due process. *Kopke v. A. Hartrodt S.R.L.*, 2001 WI 99, ¶ 8, 245 Wis. 2d 396, 629 N.W.2d 662; *Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.*, 18 F.3d 389, 391 (7th Cir. 1994) ("While we shall address these arguments serially, we note that the district court's decision [dismissing the case] must be affirmed unless personal jurisdiction is proper under both Wisconsin's long-arm statute and the Due Process clause of the Constitution.").

Once a defendant has raised a personal jurisdiction challenge, the plaintiff has the buden of proving personal jurisdiction, though "the burden is not a heavy one." *Thomas v. Ford Motor Co.*, 289 F. Supp.3d 941, 943 (E.D. Wis. 2017) (citing *Advanced Tacticat Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799-800 (7th Cir. 2014). In deciding a motion to dismiss

under Rule 12(b)(2), a court may rely on the complaint, affidavits, deposition testimony, exhibits, or other evidence in the record. *Id*. When faced with a motion to dismiss for lack of personal jurisdiction, a court must accept as true all well-pleaded facts alleged in the complaint and also resolve all factual disputes in the plaintiff's favor. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citation omitted).

### A. RBW is subject to Personal Jurisdiction under Wisconsin law

Section 801.05 of the Wisconsin Statutes provides that personal jurisdiction exists against a defendant "who when the action is commenced" is "engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise." Wis. Stat. § 801.05(1)(d). A defendant has "substantial and not isolated" activities within Wisconsin when the defendant "solicit[s], create[s], nurture[s], or maintain[s], whether through personal contacts or long-distance communications, a continuing business relationship with anyone in the state." *Dorf v. Ron March Co.*, 99 F. Supp.2d 994, 997 (E.D. Wis. 2000) (quoting *Stauffacher v. Bennett*, 969 F.2d 455, 457 (7th Cir. 1992), superseded on other grounds by rule, Fed. R. Civ. P. 4(k)(2)).

Courts applying this facet of Wisconsin's long-arm statute regarding the defendant's contacts with Wisconsin have considered five factors: 1.) the quantity of the contacts; 2.) the quality of the contacts; 3.) the source of the contacts and their connection with the cause of action; 4.) the state's interest; and 5.) the convenience of the parties. *See, e.g., FL Hunts, LLC v. Wheeler*, 2010 WI App 10, ¶ 13, 322 Wis. 2d 738, 780 N.W.2d 529. These factors are encompassed within the due process framework set forth by the Supreme Court of the United States in its personal jurisdiction cases. *Kopke*, 2011 WI 99, ¶ 23 n.9. Finally, the Wisconsin long-arm statute "is to be

7

liberally construed in favor of the exercise of jurisdiction." *Federated Rural Elec.*, 18 F.3d at 391 (7th Cir. 1994) (citing *Schroeder v. Raich*, 89 Wis. 2d 588, 593, 278 N.W.2d 871 (1979)).

At the time EMG commenced this lawsuit, RBW's contacts with Wisconsin were such that it was engaged in substantial and not isolated activities within the state. RBW maintained a continuing business relationship for more than three years with EMG through its employees in Wisconsin. RBW communicated with EMG through email beginning in 2019, and arranged for a visit to Green Bay over two days in June of that year. While RBW disclaims that there were any negotiations that took place during that visit of which Mr. Anderson has foggy recollection, the documents exchanged between the parties before and during the visit demonstrate that it was not a mere social gathering. RBW's representatives did not travel to Green Bay as tourists, or as part of an academic study of the industry. Various details of the companies' operations were discussed. RBW prepared a tailor-made presentation to EMG through which RBW pitched its company as a logistics services provider to EMG. From the roster of attendees at the meetings and what Ms. Lawniczak recalls, it appears that most, if not all, of RBW's senior leadership made the trip to Wisconsin to meet with EMG. The language in the agenda, the list of topics to be discussed and RBW's own presentation is all intended to further the business relationship between RBW and EMG.

Turning to the five factors endorsed by Wisconsin courts in determining whether a defendant has substantial and not isolated activities in the state, the quantity and quality of RBW's contacts with Wisconsin are heavily in favor of finding personal jurisdiction. RBW's representatives came to Wisconsin on two different occasions. The first visit was to pursue business with EMG, and the second was to perform the contract RBW had with EMG, as Mr. Malcom spent three days at EMG's offices. Beyond these contacts, RBW's employees were in

continuous contact by email and telephone calls with EMG's employees in Green Bay over a period of years. Taken as a whole, the quantity of RBW's contacts with Wisconsin through these dealings is numerous, and the contacts were not incidental or unsubstantial, but substantial and directed toward creating and maintaining a continuing business relationship with EMG.

With respect to the source of the cause of action, it arises directly from RBW's contacts with Wisconsin in its dealings with EMG through in-person visits and through emails and telephone calls beginning in 2019. As a result of the discussions that ripened into the Agreement between EMG and RBW, RBW later sent its employee to Wisconsin in 2020 to train at EMG's facility and communicated with EMG regarding its performance of the contract for years.

The State of Wisconsin has an interest in this action, as EMG alleges that RBW is in breach of the Agreement. Wisconsin has an interest in protecting its citizens from breaches of contract. *See PKWare, Inc. v. Meade*, 79 F. Supp. 2d 1007, 1013 (E.D. Wis. 2000) (citation omittied).

Finally, the final factor, the convenience of the parties, does not weigh heavily against this forum. EMG is located in Green Bay, and most, if not all, of its witnesses and the documents it will use to prosecute this action are located within Wisconsin.

At the time EMG filed this action, RBW had been engaging in substantial and not isolated activities in Wisconsin by maintaining a business relationship with EMG for years. The contacts RBW had with the State of Wisconsin were the result of purposeful conduct in Wisconsin. They include in-person attendance of meetings at EMG's facility in Green Bay in 2019 and 2020, as well as numerous email correspondences and telephone calls initiated by RBW to EMG's employees in Green Bay over a period of years. Through these contacts RBW maintained a business relationship with EMG, a company based in Green Bay. Under these facts, Wisconsin's long-arm statute is satisfied.

### B. Exercising Personal Jurisdiction Over RBW Comports with Due Process

Due process supports the exercise of jurisdiction over RBW. "[U]nder Wisconsin law if a plaintiff establishes that a defendant's Wisconsin contacts satisfy the long-arm statute, the court will presume that the exercise of jurisdiction satisfies due process subject to the objecting defendant's opportunity to rebut." *Shepherd Investments Intern., Ltd. v. Verizon Comms. Inc.*, 373 F.Supp.2d 853, 866 (E.D. Wis. 2005). When the defendant attempts to rebut the presumption, as RBW has, the court considers: (1) whether the defendant purposely established minimum contacts in the forum State, which the plaintiff must establish; and (2) whether exercising jurisdiction offends traditional notions of fair play. *Id.* at 866-67.

The Seventh Circuit has found that the two visits to Wisconsin by officials of a company were significant to the formation and performance of a contract, such that based on those two contacts alone the defendant in that case had conducted activities in Wisconsin sufficient to satisfy due process. *Wisconsin Electric Manufacturing Co. v. Pennant Products*, 619 F.2d 676 (7th Cir. 1980). In *Pennant Products*, the defendant travelled twice to Wisconsin. Once was in August 1977, when the defendant's vice president traveled to Wisconsin to inspect plaintiff's facilities to determine whether the plaintiff was capable of performing the contract. A second visit followed in January 1978, where defendant's general manager traveled to Wisconsin to meet with plaintiff to address a certain "misunderstanding" and changes in defendant's operation. The balance of the contacts between the parties in that case were by phone or mail. The Seventh Circuit held that the visits were not "mere convenience," but intended to determine whether the contract could be performed by the plaintiff and to negotiate about the performance after the formation of the contract. Thus, in *Pennant Products* two visits by agents of the defendant to Wisconsin – one before execution of a contract and one after, as here – were enough to satisfy due process.

Other cases from the Seventh Circuit have found that substantial preliminary negotiations by a defendant in the forum state which lead to the contract in issue is a sufficient basis for personal jurisdiction. *Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 581 (7th Cir. 1994) ("a defendant's participation in substantial preliminary negotiations conducted in the forum state leading to the contract at issue is a significant basis for personal jurisdiction."); *see also Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1215–16 (7th Cir.1984) (holding that discussions in Illinois leading to contract created jurisdiction in Illinois); *Nieman v. Rudolf Wolff & Co.*, 619 F.2d 1189, 1193 (7th Cir.) (holding that lunch meeting in Illinois on terms of contract sufficient for specific jurisdiction), *cert. denied*, 449 U.S. 920 (1980).

In *Mid-America Tablewares, Inc. v. Mogi Trading Co. Ltd.*, a representative of the defendant traveled to Eau Claire, Wisconsin, for a three-day visit at the plaintiff's facilities for preliminary discussions concerning a potential contract. 100 F.3d 1353, 1361 (7th Cir. 1996). The Seventh Circuit noted that by making that visit, the defendant "invoked the benefits and protections of Wisconsin law; at a minimum, Wisconsin provided police and fire protection" for the defendant's representative during his visit. *Id*. The Seventh Circuit's decision in *Mid-America Tablewares* is also instructive in establishing that a visit to the forum state prior to the execution of a contract can satisfy due process when undertaken in an effort to pursue a business relationship.

> Second, at the very outset of discussions between Mid–America and Mogi (indeed, in the very first fax sent from Mogi to Mid–America), Mogi's senior merchandise manager, Tsuchiya, volunteered to meet with Hemmerich in Wisconsin. Hemmerich took up the offer and Tsuchiya came to Wisconsin for three days in February 1994. Although Mogi attempts to downplay the significance of this visit as nothing more than an opportunity for Hemmerich and Tsuchiya to get acquainted with one another, this contention is belied by both the record and common sense. *Hemmerich did not contact Mogi in search of a pen-pal; he sought a business relationship* and Tsuchiya's visit to Wisconsin—during which he viewed Mid–America's warehouse and office facilities, displayed sample Mogi products to Hemmerich, and had preliminary discussions concerning Mid–America's design concept—was clearly designed to consummate that relationship. Certainly, there is

11

no reason in the record to reject Hemmerich's statement that Tsuchiya's visit was critical to Mid–America's decision to source Harvest Festival dinnerware through Mogi.

100 F.3d at 1360 (emphasis added).

There is no doubt, based on the examples provided above, that RBW purposely established minimum, and in fact substantial, contacts in Wisconsin through its business dealings with EMG. To the extent the allegations in the Complaint and the other evidence cited herein are contradicted by RBW's declaration, this Court must give the benefit of truth to the allegations in the Complaint. *See Purdue Research Foundation*, 338 F.3d at 781.

Finally, RBW has not met its burden to establish that exercising jurisdiction over it would offend traditional notions of fair play. When a defendant purposefully directs its activities at forum residents and then seeks to avoid jurisdiction, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

RBW has not presented a compelling case that jurisdiction is unreasonable. RBW has conducted business in this state with EMG through multiple visits to Green Bay, and numerous communications directed to EMG's staff in Green Bay.

The Court has and can exercise personal jurisdiction over RBW; accordingly, RBW's motion to dismiss for lack of personal jurisdiction should be denied.

### C. Alternatively, EMG Requests Leave to Conduct Jurisdictional Discovery

Jurisdictional discovery is appropriate when a plaintiff "can show that the factual record is at least ambiguous or unclear on the jurisdictional issue," though such a request "will nevertheless be denied if it is only based upon bare, attenuated, or unsupported assertions of personal jurisdiction, or when a plaintiffs claim appears to be clearly frivolous." *Kimberly-Clark*

12

*Worldwide, Inc. v. Fameccanica Cata SpA*, Case No. 10-C-917, 2011 WL 263487, at *4 (E.D. Wis. July 5, 2011) (citation omitted).

Accordingly, in the event the Court finds any of RBW's arguments have merit, which EMG denies for the reasons previously stated, RBW requests leave to amend its Complaint to address any deficiencies therein all of which, including any issues with allegations pertaining to personal jurisdiction, can be readily cured through an amended pleading. EMG would further explore the following, all of which are directly relevant to establishing that RBW's contacts with Wisconsin satisfy the Wisconsin long-arm statute and that due process is not offended by asserting jurisdiction over RBW:

- RBW's internal communications relating to the June 2019 visit to Green Bay;

- RBW's internal communications relating to the visit of Mr. Malcom to Green Bay in 2020; and

- RBW's communications with EMG's Wisconsin-based employees before and after the Agreement was executed by RBW and EMG.

## II. RBW'S MOTION TO TRANSFER SHOULD BE DENIED

RBW's request that the Court transfer this matter pursuant to 28 U.S.C. § 1404(a) should be denied because RBW has failed to demonstrate that EMG's choice of forum, or "venue privilege," *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964), was improperly exercised or that the public and private factors implicated in the analysis under 28 U.S.C. § 1404(a) defeat EMG's choice of forum.

In making its argument in favor of transfer, RBW erroneously equates the consent to jurisdiction in the Agreement as a mandatory forum selection clause. The relevant language of the Agreement states: "Any lawsuit or other action involving any dispute, claim, or controversy relating in any way to this Agreement *may be brought* in the appropriate state or federal court in

13

the state where the FACILITIES are located." (Agreement, § 24; ECF No. 2 at 28.) (emphasis added). This is permissive, not mandatory, language concerning forum.

The Seventh Circuit has repeatedly held that only when a forum selection clause is mandatory or exclusive will venue be exclusive in the forum designated. *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) ("The law is clear: where venue is specified with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive.") (citation omitted). Thus, in the *forum non conveniens* analysis involving a contractual venue provision, the "central inquiry" is "whether a clause is merely a party's consent to a court's jurisdiction—constituting a permissive forum selection clause—or whether the clause has mandatory language specifying that disputes under the contract 'shall' or 'will' be litigated in a specific venue or forum." *IAC/InterActiveCorp v. Roston*, 44 F.4th 635, 643 (7th Cir. 2022).

Here, the Agreement contains a consent to jurisdiction clause, *not* a mandatory forum selection clause. Thus, this case is different than the *Van Elzen v. Cody Askins LLC* case cited by RBW [ECF No. 5 at 18], which involved a mandatory forum selection clause with the following language "…shall be brought solely…" Case No. 22-C-840, 2022 WL 17417584, at *3 (E.D. Wis. Dec. 5, 2022). EMG may have waived jurisdictional defenses to suit in Georgia by executing the Agreement, but given the permissive language of the clause it cannot mandate that suit only be brought in Georgia. In other words, the Agreement does not defeat EMG's choice of forum.

The remaining factors that attend the *forum non conveniens* analysis do not overcome the substantial deference the Court should afford to EMG's choice of forum. The fact that RBW's witnesses and documents are in Georgia will not complicate matters, especially given the realities

of litigation in the information age, where most documents are kept and produced in electronic format and witnesses often deposed through video teleconferencing platforms. Further, RBW's history of travel to Green Bay in pursuit of EMG's business suggests it is not burdensome for the company's employees to travel to the area for trial, should that be necessary. The relative parity of timeliness in disposing of motions by the two judicial districts does not strongly favor transfer, nor does the fact that the Agreement is governed by Georgia law, as this Court routinely applies the law of other states.

## **CONCLUSION**

For the above reasons, EMG respectfully requests that RBW's motion be denied in its entirety.

Dated this 17th day of March, 2023.

                                      GODFREY & KAHN, S.C.

                                      By: s/ Jonathan T. Smies
                                              Jonathan T. Smies
                                              State Bar No. 1045422

                                      *Attorneys for Plaintiff Englewood Marketing Group, Inc.*

P.O. ADDRESS:
200 South Washington Street, Suite 100
Green Bay, WI 54301-4298
Phone: 920-432-9300
Fax: 920-436-7988
jsmies@gklaw.com