UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ENGLEWOOD MARKETING GROUP, INC.,

      Plaintiff,

      v.                 Case No. 23-C-227

ONL-RBW LOGISTICS, LLC,

      Defendant.

## DECISION AND ORDER

Plaintiff Englewood Marketing Group, Inc., sued Defendant ONL-RBW Logistics, LLC, in Brown County Circuit Court for breach of contract. Defendant removed the action to this court on February 17, 2023, asserting diversity jurisdiction under 28 U.S.C. § 1332. The case is before the court on Defendant's motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to the United States District Court for the Southern District of Georgia. For the following reasons, Defendant's motion to dismiss will be granted.

## BACKGROUND

Plaintiff is a Delaware corporation with its principal place of business located in Green Bay, Wisconsin. Compl. ¶ 3, Dkt. No. 1. It is a national distribution, marketing, and logistics solutions provider focused on kitchen, home, and personal care products, and its customers include major retailers of consumer products. *Id.* Defendant is a Georgia limited liability company, none of whose members are citizens of Wisconsin or Delaware. *Id.* ¶ 4; Dkt. No. 1-1 at 3–4.

The parties entered into a written agreement, effective August 1, 2019. Compl. ¶ 7. Under the agreement, Defendant agreed to provide up to 60,000 square feet of storage space, materials

handling facilities, and personnel necessary for the receipt, storage, packaging, and delivery of Plaintiff's goods in Pooler, Georgia. *Id.* ¶¶ 7–8. Defendant began storing Plaintiff's goods and performing services under the agreement on or about August 1, 2019. *Id.* ¶ 10.

The initial term of the agreement was for 36 months. *Id.* ¶ 12. The agreement provided that, after the initial term, the agreement would automatically renew on a year-to-year basis. The parties had the right to terminate the agreement after the initial term with six-months' notice. *Id.* On August 4, 2021, the parties executed a first amendment to the agreement, which provided that, effective August 1, 2021, Defendant would begin storing Plaintiff's goods and providing services at a new location in Savannah, Georgia as well as at the original facility located in Pooler, Georgia. *Id.* ¶ 13. The amendment also stated that the initial term of the agreement was extended until December 31, 2022, with respect to the new Savannah facility. With respect to the Pooler facility, the agreement was terminated upon the date of the removal of Plaintiff's remaining goods from that facility. *Id.*

On August 2, 2022, Plaintiff learned through a third party that Defendant did not own the Savannah facility at which it had been providing storage and services for Plaintiff. *Id.* ¶ 14. It also learned that Defendant's lease for the space would be ending on December 31, 2022, and that its landlord would be leasing the space to a third party beginning January 1, 2023. *Id.* Prior to Plaintiff learning this information, Defendant never disclosed to Plaintiff that it did not own the warehouse. *Id.* On October 18, 2022, Defendant advised Plaintiff that Plaintiff could no longer have its goods shipped to the Savannah warehouse. *Id.* ¶ 15. On December 20, 2022, Defendant threatened that if Plaintiff did not pay certain invoices within three days, Defendant would exercise its right to hold back ten loads of Plaintiff's inventory and transfer them to another secure facility until Defendant was paid in full. *Id.* ¶ 17. Nothing in the agreement authorized Defendant to hold

Plaintiff's property as leverage in a dispute concerning invoice charges. *Id.* By December 31, 2022, Defendant no longer stored Plaintiff's goods and ceased performing any services for Plaintiff under the agreement. *Id.* ¶ 16.

Plaintiff asserts that Defendant failed to comply with its obligations under the agreement because it did not provide the contractually required six-months' written notice prior to termination. *Id.* ¶ 18. Without being afforded the proper notice of termination, Plaintiff alleges that it incurred damages related to finding another storage and service provider for its goods and fulfilling its contractual obligations to third-party retailers. *Id.* ¶¶ 19–20. Plaintiff also asserts that Defendant failed to adequately perform certain services as required by the agreement. *Id.* ¶¶ 11, 25. It seeks an award of damages well in excess of $75,000 for all amounts owed under its claim for breach of contract.

**ANALYSIS**

Rule 12(b)(2) of the Federal Rules of Civil Procedure governs motions to dismiss for lack of personal jurisdiction. "The plaintiff need not include facts alleging personal jurisdiction in the complaint, but 'once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction.'" *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). "A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue*, 338 F.3d at 779 (citation omitted). Under Wisconsin law, a court must employ a two-step inquiry to determine whether personal jurisdiction may be exercised over a nonresident defendant. First, the court determines whether the defendant meets any of the criteria for personal jurisdiction under Wisconsin's long-

arm statute, Wis. Stat. § 801.05. *Kopke v. A. Hartrodt, S.R.L.*, 2001 WI 99, ¶ 8, 245 Wis. 2d 396, 629 N.W.2d 662. If the statutory requirements are satisfied, the court then considers whether the exercise of jurisdiction comports with the requirements of due process. *Id.* The plaintiff bears "the minimal burden of establishing a prima facie threshold showing" that the statutory and constitutional requirements are satisfied. *Id.* (citation omitted). In deciding whether personal jurisdiction exists, the court may rely on the complaint, affidavits, deposition testimony, exhibits, or other evidence in the record. *See Purdue*, 338 F.3d at 782. "[T]he plaintiff is entitled to have any conflicts in the affidavits (or supporting materials) resolved in its favor." *Id.* at 783.

Plaintiff asserts that Defendant is subject to jurisdiction under Wis. Stat. § 801.05(1)(d). Compl. ¶ 5. That section provides that the court has jurisdiction "[i]n any action whether arising within or without this state, against a defendant who when the action is commenced . . . [i]s engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise." Wis. Stat. § 801.05(1)(d). Plaintiff asserts that Defendant "maintained a continuing business relationship for more than three years with EMG through its employees in Wisconsin." Pl.'s Br. at 8, Dkt. No. 13. It alleges that, on June 18 and 19, 2019, Defendant's personnel visited Plaintiff's offices in Green Bay, Wisconsin to discuss logistics and operational issues in an effort to further their business relationship. After the parties signed the agreement, one of Defendant's employees visited Plaintiff's Green Bay facility from January 28 to January 30, 2020. Plaintiff also asserts that its employees communicated on at least a weekly basis with Defendant's personnel by email or phone.

Regardless of whether these contacts constitute "substantial and not isolated activities" within the state, all of the contacts Plaintiff cites occurred prior to the filing of the lawsuit. In applying § 801.05(1)(d), a court must analyze a defendant's contacts at the time the action is

4

commenced, not the defendant's contacts preceding the commencement of the action. *See FL Hunts, LLC v. Wheeler*, 2010 WI App 10, ¶ 11, 322 Wis. 2d 738, 780 N.W.2d 529; *see also Veolia Es Special Servs. v. Malin Int'l Ship Repair & Drydock, Inc.*, No. 2009-C-363, 2009 WL 2240237, at *5 (E.D. Wis. July 24, 2009). Defendant completely ended its relationship with Plaintiff in December 2022 and had no contact with Wisconsin at the time the action was commenced on January 20, 2023. Plaintiff has not demonstrated that Defendant was engaged in substantial activities in Wisconsin at the time the action was commenced to establish personal jurisdiction under § 801.05(1)(d). Because Plaintiff has not identified any contact Defendant has with Wisconsin that could satisfy the long-arm statute, the court concludes that it lacks personal jurisdiction over Defendant.

Plaintiff has requested leave to conduct jurisdictional discovery related to (1) Defendant's internal communications relating to the June 2019 visit to Green Bay; (2) Defendant's internal communications relating to the 2020 visit to Green Bay; and (3) Defendant's communications with Plaintiff's Wisconsin-based employees before and after the parties executed the agreement. "[A] plaintiff is entitled to jurisdictional discovery if he or she can show that the factual record is at least ambiguous or unclear on the jurisdictional issue." *Andersen v. Sportmart, Inc.*, 179 F.R.D. 236, 241 (N.D. Ind. 1998) (citation omitted). The court concludes that the information requested would not alter the result of the court's personal jurisdiction analysis. Therefore, Plaintiff's request for leave to take jurisdictional discovery is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for lack of personal jurisdiction (Dkt. No. 4) is **GRANTED**. Plaintiff's request for leave to take jurisdictional discovery is

5

**DENIED**.  The Clerk is directed to enter judgment dismissing Plaintiff's case without prejudice for lack of personal jurisdiction.

 **SO ORDERED** at Green Bay, Wisconsin this 24th day of April, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
